## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Estate of Leocadia Johnson, by Raymond Johnson | : | No. 2:21-cv-3529 |
| Executor | : | |
| 819 Locust Court | : | Jury of Twelve Demanded |
| Fort Collins, CO 80524 | : | |
| v. | : | |
| | : | |
| CCRC Brandywine, LLC d/b/a Freedom Village | : | |
| At Brandywine | : | |
| 111 Westwood Place, Suite 400 | : | |
| Brentwood, TN 37027 | : | |

## <u>COMPLAINT IN CIVIL ACTION</u>

## <u>GENERAL AVERMENTS</u>

1.  Plaintiff, Estate of Leocadia Johnson, by and through her Executor Raymond Johnson, an adult individual residing at the address stated in the caption of this Complaint. Leocadia Johnson resided in Chester County, Pennsylvania.

2.  Defendant, CCRC Brandywine, LLC d/b/a/ Freedom Village (hereinafter referred to as "Freedom Village") is a duly licensed and registered health care provider, which by and through its employees, agents, servants, officers, directors, managing agents and/or ostensible agents operated a skilled nursing home in the Commonwealth of Pennsylvania at 35 Freedom Boulevard, Coatesville, PA 19320, known as "Freedom Village at Brandywine" with an address for service of process at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

3.  This court has subject matter jurisdiction pursuant to 28 U.S. Code § 1332 (diversity jurisdiction); the amount in controversy exceeds $75,000.00. Venue is also properly laid in this District as the events giving rise to Plaintiff's claims occurred within this District.

4.   A professional liability action is being made against Defendant.

5.   At all times material hereto, Defendant, owned and/or operated and/or managed a health care and/or rehabilitation facility located at the address noted in the above caption.

6.   At all times material hereto, Defendant jointly conducted and/or provided healthcare services and related rehabilitation services at the facility.

7.   At all times material hereto, Defendant acted by and through its employees, independent contractors, agents, servants, officers, directors, managing agents and/or ostensible agents.

8.   At all times material hereto, Ms. Johnson was a resident of Freedom Village. On or about June 28, 2019, while a patient of Defendant, Plaintiff, Leocadia Johnson(Ms. Johnson), did suffer serious and permanent injuries (including death) from a fall. Prior to the fall, she was given both Percocet and Melatonin and was left unsupervised. After the fall, she was found on the floor with a table on top of her. She was taken to Paoli hospital and was diagnosed with an intercranial hemorrhage. She ultimately passed away on July 15, 2019 as a result of the fall and intercranial hemorrhage.  The fall occurred even though staff knew that Ms. Johnson was a "fall risk", having entered the skilled nursing facility after a previous fall at home where she lived independently. This was the result of medical negligence by the Defendant, causing Plaintiff the injuries that form the basis for this action.

9.   Ms. Johnson Johnson's (hereinafter referred to as "Johnson") injuries and death were the direct and proximate result of the negligence of the Defendant, its agents, officers, servants and/or employees, specifically the medical director, physicians, nursing Executor, nursing staff, certifies nursing assistants, aides, assistants, and/or orderlies.

10.   Defendant was responsible for the proper hiring, training and supervision of all physicians, nurses, aides and/or assistants providing health care and to keep patients from harm.

11.     In the alternative, at a minimum, the Defendant's negligence increased Ms. Johnson's risk of harm including her early demise on July 15, 2019.

12.     Defendant undertook and/or assumed a duty to Ms. Johnson to render reasonable, proper, adequate, prompt medical care and to avoid harm to Ms. Johnson, which Defendant breached.

13.     At all times material hereto, it was the responsibility of Defendant by and through its physicians, nurses, aides, assistants, agents and healthcare staff to prevent and/or protect Ms. Johnson from injuries due to falling.

14.     At all times material hereto, Defendant's physicians, nurses, aides and/or assistants were authorized to take steps to protect Ms. Johnson from a traumatic fall.

15.     At all times material hereto, the acts and/or omissions committed by Defendant's physicians, nurses, aides, assistants, agents and healthcare staff were committed within their course and scope of the explicit, implicit, inherent and customary responsibilities, duties and/or job functions.

16.     Defendant's liability to Ms. Johnson herein arises from the doctrine of respondeat superior/vicarious liability as any and all physicians, nurses, aides, assistants, agents and healthcare staff were employed by Defendant or worked at Defendant's facility. Defendant's liability is also predicated on direct and/or corporate liability as identified below.

17.     The actual names of the agents are not known at this time, but can be identified as p physicians, nurses, aides, assistants, agents and healthcare staff of Defendant' facility. These were the people charged with the responsibility to properly supervise Ms. Johnson.

18.     Defendant owed Ms. Johnson a duty to possess and exercise that degree of professional skill, care, and knowledge ordinarily possessed and exercised by and/or required of practitioners within the health care profession and/or within their field of specialization.

3

19.     At all times relevant hereto, Defendant was licensed to and did accept Medicare patients/residents.

20.     At all times material hereto, Defendant agreed that it would comply with all applicable federal and state laws, rules and regulations governing nursing facilities.

21.     At all times material hereto, Defendant held itself out to the public at large as specialists providing skilled and intermediate nursing services in the field of nursing care.

22.     The care that Defendant and/or its p physicians, nurses, aides, assistants, agents and healthcare staff exercised and exhibited in regard to Ms. Johnson, fell outside acceptable, professional, and healthcare safety standards and practices.

## COUNT I – CORPORATE NEGLIGENCE
## PLAINTIFF V. DEFENDANT

23.     Plaintiff incorporates the foregoing paragraphs set forth in the General Averments as if they were fully set forth herein.

24.     Defendant, its actual or ostensible agents, servants and employees was required to perform certain non-delegable duties for benefit of Ms. Johnson including:

    (a)     a duty to select and retain only competent physicians, nurses, aides and/or assistants;

    (b)     a duty to oversee all persons who treat, care for and/or administer health care and/or rehabilitation services to their patients; and,

    (c)     a duty to formulate, adopt and enforce adequate rules and policies to ensure quality patient care.

4

25.     Ms. Johnson's harm was caused in part by the direct and proximate result of the negligence of the aforementioned Defendant, its agents, ostensible agents, servants and/or employees.

26.     These individuals included (1) the medical director (or nursing home Executor) responsible for formulating and implementing protocols, policies and procedures, (2) physicians, (3) nurses and aides (4) any other staff charged with carrying out the protocols, policies and procedures. Clearly their names are not known at this time.

27.     Defendant knew or should have known that the deviations of the Standard of Care were occurring.

28.     The negligence of the Defendant, through its agents, ostensible agents, servants and/or employees as stated above, increased the risk and was a factor in causing harm, injuries and the eventual death of Ms. Johnson.

29.     As a result of Defendant's negligent conduct, Ms. Johnson suffered injuries which were serious in nature including, but not limited to: intercranial hemorrhage and intercranial hemorrhage which eventually led to Ms. Johnson's untimely death.

30.     As a result of Defendant's negligent conduct, Ms. Johnson was required to receive and undergo unnecessary medical attention and care and to expend various sums of money and to incur various expenses that her Estate is responsible to pay.

31.     As a further result of Defendant' negligent conduct, Ms. Johnson suffered impairment that prevented her from performing all or substantially all of the material acts and duties that constituted her usual and customary activities.

32.     As a further result of Defendant's negligent conduct, Ms. Johnson suffered physical pain, mental anguish and humiliation until the date of her death.

WHEREFORE, Plaintiff demands judgment against the Defendant, for damages, in an amount in excess of the arbitration limits, plus interest and costs.

## COUNT II – PROFESSIONAL NEGLIGENCE
### PLAINTIFF v. DEFENDANT

33.    Plaintiff incorporates the foregoing paragraphs set forth in the General Averments and Count I as if they were fully set forth herein.

34.    The death of Ms. Johnson was caused in part by the negligence, and liability producing conduct of the aforementioned Defendant, its agents, ostensible agents, servants and/or employees.  Those deviations from the accepted Standard of Care include the following:

(a)    failing to have Ms. Johnson in an "upright" position at all times to prevent falling;

(b)    failing to properly identify Ms. Johnson as a fall risk;

(c)    failing to have Ms. Johnson supervised to prevent a fall;

(d)    failing to consult with other medical professionals in the care of Ms. Johnson;

(e)    failing to properly supervise or oversee their agents, ostensible agents, servants or employees so as to prevent them from causing harm to patients such as Ms. Johnson;

(f)    failing to properly investigate and document patient incidents;

(j)    failing to timely check on Ms. Johnson to make sure she did not need help alighting;

(k)    failing to make timely room checks;

(n)    failing to create and/or adhere to an individualized nursing plan of care that would address Ms. Johnson's specific needs;

(q)    failing to follow physician's orders concerning fall prevention;

( r )   failing to have an alarm affixed to Ms. Johnson that would sound if she alighted from her bed.

( s )   failing to discontinue the Percocet and/or Melatonin long before nighttime so that the dizzying effects of those drugs would not cause her to get dizzy and fall.

35.   The Defendant violated Omnibus Budget Reconciliation Act (also known as the Nursing Home Reform Act) regulations, which establish the minimum standard of care to be followed by Defendant, including the following:

(a)   42 C.F.R. §483.15, the facility must care for its residents in a manner and in an environment that promotes maintenance or enhancement of each resident's quality of life, and here the facility failed to do so;

(b)   42 C.F.R. §483.20(b)(1)(viii).  The facility must make a comprehensive assessment of a resident's needs, using the resident assessment instrument (RAI) specified by the State.  The assessment must include at least the following: (viii) Physical functioning and structural problems;

(c)   42 C.F.R. §483.20(k). The facility must develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing, and mental psychosocial needs that are identified in the comprehensive assessment, and here the facility failed to timely do so.

(d)   42 C.F.R. §483.25.  Each resident must receive, and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental and psychosocial well-being, in accordance with the comprehensive assessment;

(e)     42 C.F.R. §483.25(h).  The facility must ensure that…(2) each resident receives adequate supervision and assistance devices to prevent accidents;

(f)     42 C.F.R. §483.30.  The facility must have sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care; and

(g)     42 C.F.R. §483.30(a)(1)(i) and (ii).  The facility must provide services by sufficient numbers of each of the following types of personnel on a 24-hour basis to provide nursing care to all residents in accordance with resident care plans: (i) except when waived under paragraph (c) of this section, licensed nurses; and other nursing personnel.

36.     Ms. Johnson's care fell within the class of persons the statutory rules, regulations and laws were intended to protect by virtue of 28 Pa. Code §201 et seq. and Omnibus Budget Reconciliation Act regulations, thus entitling the Plaintiff to adopt such laws as the standard of care for measuring Defendant' conduct.

37.     Defendant knew or should have known that the deviations of the Standard of Care were occurring.

38.     The negligence of the Defendant, through its agents, ostensible agents, servants and/or employees as stated above, increased the risk and was a factor in causing harm, injuries and the eventual death of Ms. Johnson.

39.     As a result of Defendant's negligent conduct, Ms. Johnson suffered injuries which were serious in nature including, but not limited to:  intracerebral hemorrhage. She was confused, suffered short term memory impairment, impaired balance, weakness and impaired decision until

her untimely passing on July 15, 2019 from the cerebrovascular injury, as noted on her death certificate

40.     As a result of Defendant's negligent conduct, Ms. Johnson was required to receive and undergo unnecessary medical attention and care and to expend various sums of money and to incur various expenses that her Estate is responsible to pay.

41.     As a further result of Defendant's negligent conduct, Ms. Johnson suffered impairment that prevented her from performing all or substantially all of the material acts and duties that constituted her usual and customary activities.

42.     As a further result of Defendant's negligent conduct, Ms. Johnson suffered physical pain, mental anguish and humiliation until the date of her death.

43.     As a result of Defendant' negligent conduct, Ms. Johnson suffered injuries which were serious in nature including, but not limited to:  intercranial hemorrhage which lead to her untimely death.

44.     As a result of Defendant's negligent conduct, Ms. Johnson was required to receive and undergo unnecessary medical attention and care and to expend various sums of money and to incur various expenses that her Estate is responsible to pay.

45.     As a further result of Defendants' negligent conduct, Ms. Johnson suffered a loss of earnings and impairment of earning power and capacity.

46.     As a further result of Defendants' negligent conduct, Ms. Johnson suffered impairment that prevented her from performing all or substantially all of the material acts and duties that constituted her usual and customary activities.

47.     As a further result of Defendant's negligent conduct, Ms. Johnson has suffered physical pain, mental anguish and humiliation until the date of her death.

9

WHEREFORE, Plaintiff demands judgment against the Defendant, for damages, in an amount in excess of the arbitration limits, plus interest and costs.

## COUNT III – WRONGFUL DEATH ACTION
### PLAINTIFF v. DEFENDANT

48.     Plaintiff incorporates by reference hereto, all of the allegations contained in the General Averments and Counts I through II as if they were set forth at length herein.

49.     Plaintiff brings this action on behalf of the beneficiaries, her three adult children.

50.     The Plaintiff brings this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. §8301 and Pa. R.C.P. No. §2202(a).

51.     The Ms. Johnson is survived by her family who alone are entitled to recover damages, and it is on their behalf that this action is being brought:

52.     The Ms. Johnson did not bring an action of personal injuries during her lifetime, and no other action for the death of the Ms. Johnson has been commenced against the Defendant.

53.     As a direct and proximate result of the aforesaid negligence of Defendant, Ms. Johnson's family has suffered, and Defendant is liable for the following damages:

(a)     medical, funeral and burial expenses for the Ms. Johnson;

(b)     expenses of administration related to Ms. Johnson's injuries;

(c)     the Plaintiff's loss of the support, comfort, counsel, aid, association, care, friendship, guidance, love, affection and services of the Ms. Johnson;

(d)     the Plaintiff's loss of contributions it would have received from the time of the Ms. Johnson's death until today; and

(e)     such other damages as are permissible in a wrongful death action.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages, in an amount in excess of the arbitration limits, plus interest and costs.

## COUNT IV – SURVIVAL ACTION
## PLAINTIFF v. DEFENDANT

54.     Plaintiff incorporates by reference hereto, all of the allegations contained in the General

Averments and Counts I through III as if they were set forth at length herein.

55.     Plaintiff brings this survival action on behalf of the estate of the Ms. Johnson pursuant to

42 Pa. Cons. Stat. §8302 and 20 Pa.C.S.A. 3373.

56.     As a direct and proximate result of Defendant's aforesaid acts of negligence, Defendant is

liable to the Ms. Johnson's estate for the following damages:

(a)     Ms. Johnson's pain, suffering, and mental anguish between the time of her

injuries and the time of her death;

(b)     Ms. Johnson's loss of retirement and social security income;

(c)     Ms. Johnson's other financial losses suffered as a result of her death;

(d)     Ms. Johnson's loss of enjoyment of life; and

(e)     such other damages as are permissible in a Survival Action.

WHEREFORE, Plaintiff demands judgment against the Defendant, for damages, in an

amount in excess of the arbitration limits, plus interest and costs.

**HABERMAN LAW, P.C.**


BY:_____
        Leonard P. Haberman, Esq.
        Identification No.: 80446
        1800 JFK Boulevard, Suite 1500-A
        Philadelphia, PA  19103
        (215) 454-6904
        *Attorney for Plaintiff, The Estate of Leocadia Johnson*